UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WANDA J., | ) |
| Plaintiff, | ) No. 20-cv-2661 |
| v. | ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Wanda J. appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. The parties have filed cross motions for summary judgment.[1] As detailed below, Plaintiff's motion for summary judgment [dkt. 21] is GRANTED and the Commissioner's motion for summary judgment [dkt. 25] is DENIED; the Court hereby remands this matter for further proceedings.

**1. Procedural History**

Plaintiff filed for both Disability Insurance Benefits and Supplemental Security Income on October 7, 2016, alleging a disability onset date of June 21, 2016. [Administrative Record ("R.") 20.] Plaintiff's claims were denied initially and upon reconsideration. *Id*. On February 27, 2019, after an administrative hearing, Administrative Law Judge ("ALJ") Luke Woltering issued an unfavorable decision. [R. 20-34.] Plaintiff requested Appeals Council review, which was denied on December 16, 2019 [R. 1-3], causing the ALJ's February 27, 2019 decision to constitute the final decision of the Commissioner. 20 C.F.R. §404.981. Plaintiff filed the instant action on My 1, 2020, seeking review

---

[1] Plaintiff has filed a Brief in Support of her Motion to Reverse the Decision of the Commissioner of Social Security [dkt. 21], which the Court construes as a motion for summary judgment. The Commissioner has filed a Response to Plaintiff's Motion for Summary Judgment [dkt. 25], which the Court also construes as a motion for summary judgment.

of the Commissioner's decision. [Dkt. 1.]

**2.       The ALJ's Decision**

On February 27, 2019, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 20-34.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 21, 2016. [R. 22.] At Step Two, the ALJ found Plaintiff had the severe impairments of obesity; asthma/chronic obstructive pulmonary disease; obstructive sleep apnea; cardiomegaly with pulmonary vascular congestion; and degenerative disc disease of the lumbar spine. [R. 22-23.] The ALJ determined that Plaintiff's "hypertension, nontoxic goiter, and mixed hyperlipidemia, among others," were nonsevere impairments.[2] [R. 23.] The ALJ also found the Record contained no medical evidence to substantiate a medically determinable impairment resulting from any psychological pathology (including depression). [R. 23-24.] At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 24-27.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: she can only walk for 15 minutes at a time (for up to two hours total in an eight-hour day); she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; she cannot work around hazards such as unprotected heights or exposed moving mechanical parts; and she cannot tolerate more than occasional exposure to extreme cold, heat, humidity, fumes, odors, dust, gasses, poor ventilation, and other pulmonary irritants. [R. 27-32.]

At Step Four, the ALJ determined that Plaintiff was not capable of performing any of her past

---

[2]    This language leaves the Court unable to tell what "other" impairments the ALJ considered, particularly in combination with each other. *See* 20 C.F.R. § 416.923 (ALJs must consider the combined effect of all impairments, even those that are not severe).

relevant work. [R. 32.] At Step Five, however, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. [R. 33-34.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 34.]

The ALJ's decision includes the following references to Plaintiff's need for supplemental oxygen:

> "Otherwise, to address her respiratory symptoms, the claimant's health providers primarily focused on conservative treatment consisting of prescription aerosol inhalers, antihistamines, and anti-inflammatories as needed as well as the use of a home-oxygen machine as needed." [R. 29.]
>
> "The claimant reported improvement in her respiratory symptoms through her conservative treatment plan and, at times, indicated that she used her albuterol inhaler and oxygen machine '1-2 x/week.'" [R. 30.]
>
> "The claimant acknowledged that she does not consistently use her home oxygen machine or steroid inhalers." [R. 31.]
>
> "Notably, the claimant was able to walk for 335 meters without stopping within six minutes during her pulmonary function evaluation without an oxygen mask." [R. 30.]

### 3.   Social Security Regulations and Standard of Review

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)

(internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

**4.  Discussion**

Plaintiff alleges the ALJ's RFC assessment improperly fails to account for Plaintiff's need for supplemental oxygen. The Court agrees and remands on this basis.

In February 2017, Plaintiff was prescribed supplemental home oxygen in response to her hypoxic respiratory failure and asthma. [R. 535, 669.] Plaintiff testified that she used her oxygen tank when walking because she would get shortness of breath, she never left her home without her oxygen tank, and she used her oxygen tank every time she left her home. [R 54-55, 62-63.] She reported to treatment providers that she also used her supplemental oxygen as needed while walking around inside her home, but felt it "only helps 'a little bit'." [R. 593, 658.]

Neither the Disability Determination Services ("DDS") consultants nor Plaintiff's treatment provider, Dr. Madhulika Saxena, M.D., offered an opinion relative to Plaintiff's prescribed supplemental oxygen or any limitations stemming therefrom.[3]

In his decision, the ALJ barely acknowledged Plaintiff's prescription for supplemental oxygen. [R. 29.] The ALJ then misleadingly noted that Plaintiff "reported improvement in her respiratory symptoms through her conservative treatment plan and, at times, indicated that she used her albuterol inhaler and oxygen machine '1-2 x/week.'" [R. 30.] However, the ALJ conflated Plaintiff's reported albuterol usage with her oxygen usage – while Plaintiff did inform her physicians she was using her albuterol inhaler 1-2 x/week[4] [R. 658], she reported no such limitation in her supplemental oxygen

---

[3]  The Court finds it unlikely the first DDS consultant would have known about Plaintiff's prescription, though, as Plaintiff was only prescribed supplemental oxygen 7 days before the first DDS assessment. [R. 77-78.]

[4]  Apart from conflating Plaintiff's albuterol and oxygen usage, it seems the ALJ may have also cherry picked this lower albuterol number, as two of the other records referenced by the ALJ reflect daily albuterol usage. [R. 663, 669.]

use [R. 658, 663, 669]. The ALJ also noted that Plaintiff "acknowledged she does not consistently use her home oxygen machine…" but the ALJ failed to point to any Record citation to support this statement.[5] [R. 31.] Finally, the ALJ found it notable Plaintiff "was able to walk for 335 meters without stopping within six minutes during her pulmonary function evaluation without an oxygen mask" [R. 30], yet the ALJ failed to note that Plaintiff testified she could probably walk a block, although (during normal non-test conditions) she has to take two to three rest stops during that time.[6] [R. 56.] Thus, as the Commissioner argues, "[a]ccordingly, the ALJ did not find that Plaintiff required supplemental oxygen…" [dkt. 25, p. 11] and the ALJ allowed for none in Plaintiff's RFC [R. 27-32].

In reaching this RFC, the ALJ relied on a Record that lacked a medical opinion assessing Plaintiff's use of prescribed supplemental oxygen and any physical limitations stemming therefrom. To fill in this gap, the ALJ could only have resorted to lay speculation, as there is no medical opinion for him to have relied upon. This was improper. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996) (ALJ impermissibly "indulged his own lay view" of the case by failing to ground his opinion "on any medical evidence or authority"); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). ("We have recognized that an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."). An ALJ is not

---

[5] The intended implications of this statement are not well developed in the ALJ's decision, but the ALJ may have intended to deny benefits due to noncompliance with prescribed treatment. *See* 20 C.F.R. § 416.930. While an ALJ is required to consider a claimant's need to follow prescribed treatment, the regulations state that in "order to get benefits, you must follow treatment prescribed by your medical source(s) *if this treatment is expected to restore your ability to work*." 20 C.F.R. § 416.930(a) (emphasis added). The ALJ made no finding that Plaintiff could return to work if only she followed her prescribed supplemental oxygen treatment, and the medical evidence of record does not indicate this either. *See Hunt v. Berryhill*, 2018 WL 1069441 at *3 and fn. 4 (S.D. Ind. Feb. 23, 2018) (citing *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985)). Absent such evidence or finding, if, in fact, the ALJ intended to use § 416.930(a) as a basis to deny Plaintiff's claims for benefits [R. 31], that was error.

[6] A typical Chicago city block is 330 feet by 660 feet (100 meters x 200 meters). *Street and Site Plan Design Standards* (April 2007), City of Chicago, https://www.chicago.gov/dam/city/depts/cdot/StreetandSitePlanDesignStandards407.pdf (last accessed Sept. 21, 2021). Therefore, Plaintiff was able to walk about a block and a half during her pulmonary function evaluation, which is not a wholly greater distance than Plaintiff estimated her abilities to be. However, neither Plaintiff's admission or her ability to walk for 335 meters during her pulmonary function test speaks to her ability to "walk for 15 minutes at a time and up to two hours in an eight-hour workday," as the ALJ determined Plaintiff to be capable of within the RFC. [R. 31.]

permitted to make an independent medical conclusion and may not advance her opinion "without relying on other medical evidence or authority in the record." *Boiles v. Barnhart*, 395 F.3d 421, 424 (7th Cir. 2005). "There must be evidence, other than the ALJ's own lay judgment, to substantiate a determination that Claimant does not require the use of portable oxygen, or the ALJ must incorporate Claimant's use of portable oxygen in her RFC assessment and incorporate any such limitation in the hypothetical questions posed to the vocational expert."[7] *Kobal v. Colvin*, 2015 WL 148579, at *3 (N.D. Ill. Jan. 9, 2015).

The Record does not simply note the use of supplemental oxygen; rather, Plaintiff was prescribed supplemental oxygen by a physician, two liters a minute on exertion. [R. 535, 663, 671.] The Record also contained Plaintiff's own testimony concerning the need for the same, as well as notes from her treatment providers that she was using it as directed (*i.e.*, as needed on exertion). [R. 54-44, 62-63, 593, 658, 669.] The ALJ asked the vocational expert about the use of supplemental oxygen and how that would factor into job availability. [R. 67-71.] And then the ALJ filled the evidentiary deficit surrounding Plaintiff's need for supplemental with his own lay opinion that Plaintiff did not need the supplemental oxygen prescribed to her.

The speculation the ALJ engaged in (essentially, that the prescribed supplemental oxygen was a conservative treatment that Plaintiff was noncompliant with and did not need anyway [see ALJ's

---

[7] Here, the ALJ *did* ask the Vocational Expert ("VE") about portable oxygen (N.B. apparently the ALJ had reason to believe Plaintiff might have needed supplemental oxygen, or there would be no reason to have posed this hypothetical to the VE). The ALJ specifically inquired of the VE: "[w]ould the need to use supplemental oxygen affect any of these jobs?" [R. 67.] The VE then gave a bafflingly incomplete answer. Specifically, the VE acknowledged that supplemental oxygen would affect the availability of jobs because the use of the same would be likely to take an individual off-task, but the VE also specified she did not know the percentage of jobs it would affect, as she was "not really sure how [supplemental oxygen] works. But the potential of maybe having to set it up or carry it with you might make the person off-task more than 10% of the time [which is the maximum allowable off-task time]." [R. 67-69.] The VE admitted she did not know how the device works about which the ALJ asked her a crucial, potentially work-preclusive question and, thus, her credibility has been undercut to the point that no "reasonable mind" could accept the expert's testimony on this topic. It was the ALJ's duty to further develop the record on this topic when he got such a nondefinitive answer from the VE. *Richardson v. Perales*, 402 U.S. 389, 410 (1971); *Sims v. Apfel*, 530 U.S. 103, 111 (2000); SSR 00-4P (2000). He did not. On remand, the ALJ should ensure the vocational expert is familiar with supplemental oxygen enough to form an opinion on how it affects one's work activities.

citations to Plaintiff's need for supplemental oxygen, p. 3, *supra*]) "is not enough to trump a treating physician's prescription for portable oxygen without other medical evidence in the record to support a conclusion that Claimant does not need the portable oxygen." *Kobal*, 2015 WL 148579, at *3. The ALJ does not cite to any other medical evidence in the record that would support his conclusion that Plaintiff did not have a medical need to use her prescribed, portable oxygen. Thus, the Court agrees with Plaintiff and concludes the ALJ impermissibly played doctor when he rejected Plaintiff's use of portable oxygen by failing to account for that in the RFC assessment (or failing to provide any analysis of whether, for example, Plaintiff was limited by her need for supplemental oxygen and, if so, in what ways). Therefore, the Court remands on the basis that the ALJ's decision lacks sufficient evidentiary support, an adequate discussion of the issues, and is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

**5.    Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. The Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff other than those discussed herein. Plaintiff's motion for summary judgment [dkt. 21] is GRANTED and the Commissioner's motion for summary judgment [dkt. 25] is DENIED.

Entered: October 13, 2021

                                                                         Susan E. Cox,
United States Magistrate Judge